# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1915

_____

| | | |
|---|---|---|
| Sohaib Bin Lateef, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | On Petition for Review of an |
| | * | Order from the Board of |
| Department of Homeland Security; | * | Immigration Appeals. |
| Michael Aytes, Acting Deputy | * | |
| Director of the United States | * | |
| Citizenship and Immigration Services, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: January 14, 2010
Filed: January 29, 2010

_____

Before MURPHY and BYE, Circuit Judges, and GOLDBERG,[1] Judge.

_____

MURPHY, Circuit Judge.

Sohaib Bin Lateef petitions for review of the decision of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ's) decision finding him removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two or more crimes involving moral turpitude. Lateef argues that his

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

conviction under 42 U.S.C. § 408(a)(7)(A) for using an unlawfully obtained social security number did not involve moral turpitude and that he is therefore not removable under § 1227(a)(2)(A)(ii).  We deny the petition.

I.

Sohaib Bin Lateef is a native and citizen of Pakistan who entered the United States in 1980 on a student visa and obtained a social security number.  Removal proceedings were initiated against him in 1987 because he had remained in the country after his visa had expired.  After he failed to appear, those proceedings were administratively closed.  In 1988 Lateef obtained lawful permanent resident status under the Special Agricultural Workers legalization program by using the name Syed Lateef Sohaib, a name he claims was given him by his grandfather at birth.  In 1989 he used that name to obtain a social security number although he already held one under the name Sohaib Bin Lateef.

On February 26, 2003, Lateef used the second social security number to obtain a Missouri state identification card under the name Syed Lateef Sohaib.  He then sought naturalization under that name.  During a November naturalization interview he testified untruthfully under oath that he had been married only once.  In December 2003, Lateef was arrested by federal agents on suspicion of charges unrelated to his immigration status.  Although those charges do not appear to have been pursued, Lateef pled guilty on May 21, 2004 to using an unlawfully obtained social security number, in violation of § 408(a)(7)(A), and to knowingly and intentionally making false statements under oath relating to naturalization and citizenship, in violation of 18 U.S.C. § 1015(a).

In 2004 the Department of Homeland Security (DHS) again initiated removal proceedings against Lateef.  While those proceedings were pending, Lateef filed a petition for an immigrant visa and for adjustment of status under the name Syed Lateef Sohaib.  Although that petition was initially granted, the DHS revoked its approval when it discovered the removal proceedings against Lateef which had been

administratively closed in 1987. The DHS then terminated the 2004 removal proceedings and recalendared those from 1987. It charged Lateef under 8 U.S.C. § 1227(a)(1), as an alien who had overstayed his authorization, and under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."

Lateef conceded that he had overstayed his authorization, in violation of § 1227(a)(1), but contested removability under § 1227(a)(2)(A)(ii), arguing that his conviction under § 408(a)(7)(A) for using an unlawfully obtained social security number did not involve moral turpitude. He also sought adjustment of status under 8 U.S.C. § 1255 and cancellation of removal under 8 U.S.C. § 1182(h). The IJ concluded that a conviction under § 408(a)(7)(A) involves moral turpitude because an essential element of that crime is proof of the defendant's intent to deceive. The IJ then found Lateef deportable under § 1227(a)(2)(A)(ii), denied him adjustment of status and cancellation of removal, and ordered him removed.

Lateef appealed to the BIA, arguing that his conviction under § 408(a)(7)(A) did not involve moral turpitude. The BIA rejected his argument because it found that fraud was a necessary element of § 408(a)(7)(A). It also was not persuaded by his argument that the IJ had erred in denying him cancellation of removal and affirmed the IJ's decision. Lateef petitioned for review of the BIA's final order of removal solely on the basis that his conviction under § 408(a)(7)(A) did not involve moral turpitude.

II.

Although we lack jurisdiction to review the final order of removal against Lateef because the offenses which served as the basis for the order are encompassed by § 1227(a)(2)(A)(i), see 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review," § 1252(a)(2)(D). We review the BIA's decision as the final decision of the agency, Salkeld v. Gonzales, 420 F.3d 804, 808 (8th Cir. 2005), examining its conclusions of

law de novo but according substantial deference to its interpretation of immigration statutes and regulation, Kim v. Holder, 560 F.3d 833, 836 (8th Cir. 2009). Thus, the BIA's construction of an ambiguous statutory phrase will be upheld if reasonable. Hernandez-Perez v. Holder, 569 F.3d 345, 347 (8th Cir. 2009).

Congress did not define the phrase "crime involving moral turpitude" in either the Immigration and Nationality Act of 1952 (INA), Pub. L. No. 82-414, 66 Stat. 163 (codified as amended in scattered sections of 8 U.S.C.) or its legislative history, but instead "left [its definition] to future administrative and judicial interpretation." Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995) (quoting Cabral v. INS, 15 F.3d 193, 195 (1st Cir. 1994)). As a result, the BIA's construction of the phrase "crime involving moral turpitude" is due deference and will be upheld if reasonable. See Hernandez-Perez, 569 F.3d at 347.

The BIA considers a crime to involve moral turpitude if under the relevant statute "it necessarily entails conduct . . . that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." In re Kochlani, 24 I. & N. Dec. 128, 129 (BIA 2007); see also Hernandez-Perez, 569 F.3d at 347. Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude. Jordan v. De George, 341 U.S. 223, 232 (1951); see also In re Kochlani, 24 I. & N. Dec. at 130; In re Flores, 17 I. & N. Dec. 225, 227–28 (BIA 1980) (citing Jordan, 341 U.S. at 232).

Here, the BIA concluded on the basis of its precedents that the crime of using an unlawfully obtained social security number, in violation of § 408(a)(7)(A), is one of moral turpitude. In relevant part, § 408(a)(7)(A) states, "Whoever . . . for the purpose of obtaining . . . any other benefit to which he . . . is not entitled, . . . willfully, knowingly, and with intent to deceive, uses a social security account number, assigned . . . on the basis of false information furnished . . . by him . . . shall be guilty of a felony . . . ." Since intent to deceive for the purpose of wrongfully obtaining a benefit

-4-

is essential to conviction under § 408(a)(7)(A), the BIA's interpretation of that crime as one involving moral turpitude is reasonable. See Hyder v. Kaiser, 506 F.3d 388, 391–92 (5th Cir. 2007) (§ 408(a)(7)(A) involves moral turpitude because dishonesty is an essential element); cf. Izedonmwen v. INS, 37 F.3d 416, 417 (8th Cir. 1994) ("knowingly and wilfully obtaining by fraud and false pretenses Pell grant funds" is a crime involving moral turpitude); United States ex rel. Carrollo v. Bode, 204 F.2d 220, 222 (8th Cir. 1953) ("[C]onspiring to defraud the United States is a crime involving moral turpitude . . . ." (internal quotation marks omitted)). The BIA's interpretation is thus due our deference. Hernandez-Perez, 569 F.3d at 347.

Lateef does not contest the conclusion that § 408(a)(7)(A) falls within the class of crimes considered morally turpitudinous. Rather, he asserts that Congress intended to exempt § 408(a)(7)(A) from the general rule, notwithstanding that it requires proof of an intent to deceive. His argument rests upon 42 U.S.C. § 408(d) (recodified at 42 U.S.C. § 408(e)), an amendment to the INA that immunizes individuals who have received certain immigration status adjustments from prosecution for violations of § 408(a)(6) and (7) that occurred prior to January 4, 1991. The House conference committee explained the intent behind the amendment:

> The Conferees intend that this exemption apply only to those individuals who use a false social security number to engage in otherwise lawful conduct. . . . The Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to have exhibited moral turpitude with respect to the exempted acts for purposes of determinations made by the Immigration and Naturalization Service.

H.R. Conf. Rep. No. 101-964, at 948 (1990), reprinted in 1990 U.S.C.C.A.N. 2374, 2653.

Lateef was not exempted from prosecution under § 408(d). Nevertheless, he appears to contend that he should have been exempted under § 408(d) and that its

legislative history therefore dictates that his conviction under § 408(a)(7)(A) did not involve moral turpitude. We disagree. Lateef would not qualify for the § 408(d) exemption because the conduct for which he was convicted did not occur before January 4, 1991. See § 408(d). Contrary to his assertion, he was not convicted for having unlawfully obtained a second social security number in 1989 on the basis of false information. That conduct is prohibited by § 408(a)(6). Lateef was instead indicted under, pled guilty to, and was convicted of violating § 408(a)(7)(A), for using an unlawfully obtained social security number to obtain a Missouri identification card on or about February 26, 2003. Since that conduct occurred after January 4, 1991, neither § 408(d) nor its legislative history is directly applicable.

Lateef further asserts that even if he would not have qualified for the § 408(d) exemption, its legislative history clarifies that § 408(a)(7)(A) should not be considered morally turpitudinous in his case. For support of this proposition, he invokes Beltran-Tirado v. INS, 213 F.3d 1179 (9th Cir. 2000), in which the Ninth Circuit concluded that a different crime, the use of a false social security number in violation of § 408(a)(7)(B), does not involve moral turpitude if the alien violated that prohibition for an otherwise lawful purpose. Id. at 1183–84. Lateef contends that he used the unlawfully obtained social security number for the otherwise lawful purpose of obtaining a state identification card and that his conviction under § 408(a)(7)(A) is therefore not one involving moral turpitude.[2]

In Beltran-Tirado, the Ninth Circuit relied upon the legislative history of § 408(d). Id. at 1183–84. The petitioner there had been convicted under § 408(a)(7)(B) because she had found a social security card and used it to obtain employment and credit. Id. at 1182. The Ninth Circuit concluded that the conference committee report

---

[2]Because the statutory definition of § 408(a)(7)(A) which includes the intent to deceive controls the determination of whether Lateef's conviction involved moral turpitude, his reliance on the facts underlying the conviction is misplaced. See Hernandez-Perez, 569 F.3d at 348.

for § 408(d) clearly evidenced Congress's intent that § 408(a)(7)(B) not be considered a crime involving moral turpitude and that it therefore did not need to defer to the BIA's contrary conclusion. Id. at 1183–84.

We decline to follow Beltran-Tirado. By its plain statutory terms the § 408(d) exemption applies only to aliens who have been granted certain immigration status adjustments and then only to future prosecutions of those aliens for violations of § 408(a)(7)(A) and (B) that occurred prior to January 4, 1991. The conference committee expressly limited its reach, providing that convictions under § 408(a)(7)(A) and (B) should not be considered morally turpitudinous for "individuals who are provided exemption from prosecution under [§ 408(d)]." 1990 U.S.C.C.A.N. at 2653. "[I]n Beltran-Tirado, the Ninth Circuit appears to have expanded [this] narrow exemption beyond what Congress intended. . . . The mere fact that Congress chose to exempt a certain class of aliens from prosecution for certain acts does not necessarily mean that those acts do not involve moral turpitude in other contexts." Hyder, 506 F.3d at 393; Serrato-Soto v. Holder, 570 F. 3d 686, 692 (6th Cir. 2009) (declining to follow Beltran-Tirado for the same reason).

### III.

Since Lateef did not qualify for the § 408(d) exemption, the legislative history of that statute does not apply to the moral turpitude issue in his conviction under § 408(a)(7)(A). The BIA's conclusion that his conviction involved moral turpitude is reasonable because § 408(a)(7)(A) requires proof of a defendant's intent to deceive and its interpretation of the ambiguous statutory phrase "crime involving moral turpitude" is therefore due deference. Accordingly, we deny the petition for review.

_____