# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3668
_____

Eduardo Adame-Hernandez

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 15, 2019
Filed: July 16, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Eduardo Adame-Hernandez, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals (BIA) upholding the decision of an immigration judge (IJ) concluding that Adame-Hernandez was ineligible for cancellation of removal because of a prior conviction for a crime involving moral turpitude and because Adame-Hernandez lacked the requisite moral character. Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

In 1994, Adame-Hernandez entered the United States near El Paso, Texas without being admitted or paroled and without inspection. In June 2009, he pled guilty in Nebraska state court to driving under the influence of drugs or alcohol and false reporting. The next month, Adame-Hernandez pled guilty, again in Nebraska state court, to two more charges of driving under the influence of drugs or alcohol and false reporting. Adame-Hernandez was subsequently served with a Notice to Appear, charging him with removability. Through counsel, Adame-Hernandez admitted the factual allegations in the Notice to Appear, conceded removability, and designated Mexico as the country of removal.

Adame-Hernandez then filed an application for cancellation of removal, which the IJ denied. The IJ concluded that, based on his convictions for false reporting, Adame-Hernandez was statutorily ineligible for cancellation of removal, pursuant to 8 U.S.C. § 1229b. The IJ examined the statute of conviction, Neb. Rev. Stat. § 28-907, and determined that at least one of Adame-Hernandez's convictions was under subsection (1)(a), which included an explicit element of intent to deceive, rendering the crime categorically one involving moral turpitude. Based on this conclusion, the IJ determined that Adame-Hernandez was ineligible for cancellation of removal because his conviction both barred a finding of good moral character and was a statutorily specified offense that barred cancellation. Adame-Hernandez appealed to the BIA. The BIA affirmed the IJ, similarly concluding that his false reporting convictions were categorically crimes involving moral turpitude and rendered him statutorily ineligible for cancellation of removal. This petition for review followed, with Adame-Hernandez again arguing that his convictions for false reporting under Nebraska law do not qualify as crimes involving moral turpitude.

"Although we lack jurisdiction to review the ultimately discretionary denial of cancellation of removal, 8 U.S.C. § 1252(a)(2)(B), we are not precluded from considering constitutional claims or questions of law raised upon a petition for review, § 1252(a)(2)(D)." Miranda-Romero v. Lynch, 797 F.3d 524, 525 (8th Cir.

2015) (internal quotation marks omitted). We conduct de novo review of constitutional claims or questions of law, "according substantial deference to the agency's interpretation of immigration statutes and regulations." Id. (internal quotation marks omitted).

"The Immigration and Nationality Act provides that an alien who is convicted of a crime involving moral turpitude is ineligible for cancellation of removal, where the offense is punishable by a sentence of one year or longer. Id. (citing 8 U.S.C. §§ 1229b, 1227(a)(2)(A)(i)). But the INA does not define "crime involving moral turpitude"; "the meaning of the phrase was left to future administrative and judicial interpretation." Id. (internal quotation marks omitted). Courts have since defined crimes involving moral turpitude as "requir[ing] conduct that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." Guardado-Garcia v. Holder, 615 F.3d 900, 902 (8th Cir. 2010) (internal quotation marks omitted). Further, "[c]rimes involving the intent to deceive or defraud are generally considered to involve moral turpitude." Id. (internal quotation marks omitted).

In determining whether a specific conviction is one for a crime involving moral turpitude, we first consider whether the "statute [of conviction] defines a crime in which moral turpitude necessarily inheres[.]" Chanmouny v. Ashcroft, 376 F.3d 810, 812-13 (8th Cir. 2004) (internal quotation marks omitted). If so, "the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends." Id. at 812. But where "the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a 'divisible' statute, and we look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted." Id.

Adame-Hernandez has two convictions for violating Neb. Rev. Stat. § 28-907. Because Neb. Rev. Stat. § 28-907 has various subsections, some of which do not

-3-

necessarily involve moral turpitude, we rely on the records of conviction to determine under which specific subsection Adame-Hernandez was charged. The record reveals that one of Adame-Hernandez's false reporting convictions undisputedly falls under Neb. Rev. Stat. § 28-907(1)(a), which provides:

> [a] person commits the offense of false reporting if he or she . . . [f]urnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter[.]

A person who violates this subsection faces a maximum of "not more than one year imprisonment." Neb. Rev. Stat. § 28-106(1); Neb. Rev. Stat. § 28-907(2)(a). The Nebraska Supreme Court has interpreted false reporting under Neb. Rev. Stat. § 28-907(1)(a) to include three elements: (1) "a false statement to a peace officer; [(2)] . . . given with the intent to impede an investigation; and [(3)] the investigation must be of an actual criminal matter." State v. Ewing, 378 N.W.2d 158, 162 (Neb. 1985). Under the Nebraska Supreme Court's own explanation, a conviction under this subsection requires that the defendant act with some intent to deceive a peace officer. A conviction under Neb. Rev. Stat. § 28-907(1)(a) is thus a crime involving moral turpitude that renders a petitioner statutorily ineligible for cancellation of removal. See Guardado-Garcia, 615 F.3d at 902.

Adame-Hernandez argues that our decision in Bobadilla v. Holder 679 F.3d 1052 (8th Cir. 2014), is dispositive. There, the Court remanded to the BIA for further determination of whether an alien's conviction under a Minnesota statute for giving a false name to a police officer was a crime involving moral turpitude. Id. at 1057-58. Bobadilla expressly limited its discussion to the "intent to obstruct justice" required under the Minnesota statute, concluding that the "broad, undefined term" could not create an offense that categorically qualified as a crime involving moral turpitude. Id. at 1058. Nebraska's false-reporting statute involves a narrower scienter

-4-

requirement: the intent to impede an actual criminal investigation. This alleviates any concern that Adame-Hernandez's conviction could have been for a crime that did not involve moral turpitude, or that "every person who intentionally makes a government official's task more difficult is guilty of 'inherently base, vile, or depraved' conduct." See id. Although the Bobadilla panel, in dicta, pondered how giving a false name fit within the broader definition of "obstruction of justice," that discussion does not alter our conclusion that, based on the Nebraska Supreme Court's recitation of the elements of § 28-907(1)(a), the offense requires an intent to deceive. And "Bobadilla does not alter the principle that "[c]rimes involving the intent to deceive . . . are generally considered to involve moral turpitude." Villatoro v. Holder, 760 F.3d 872, 878 n.5 (8th Cir. 2014). We decline to rely on an interpretation of another state's false-reporting statute, considered in the context of removability, to conclude that Adame-Hernandez has met his burden of showing entitlement to cancellation of removal.

Adame-Hernandez's argument that the IJ and BIA both erred because only one of his convictions was undisputedly under Neb. Rev. Stat. § 28-907(1)(a) is unpersuasive. Adame-Hernandez is correct that the state court record for only one of his convictions explicitly mentions subsection (1)(a); the record for the other conviction only refers to Neb. Rev. Stat. § 28-907 and does not make reference to a specific subsection. However, this is immaterial to our analysis because a single conviction under subsection (1)(a) is sufficient to trigger ineligibility for cancellation of removal. See Miranda-Romero, 797 F.3d at 526 (denying petition for review where IJ and BIA found petitioner ineligible for cancellation of removal based on a single conviction for a crime involving moral turpitude). Because false reporting under Neb. Rev. Stat. § 28-907(1)(a) is categorically a crime involving moral turpitude and Adame-Hernandez undisputedly has a conviction under this subsection,

the IJ and BIA correctly determined that Adame-Hernandez was ineligible for cancellation of removal.[1]  We thus deny the petition for review.

———————————————

_____

[1]For the first time in his reply brief, Adame-Hernandez argued that the "petty offense" exception to the statutory bar for cancellation of removal based on a conviction for a crime involving moral turpitude applies.  However, Adame-Hernandez has waived this argument by failing to raise it in his opening brief. Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").