# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1614
_____

Juan Jose Inzunza Reyna,

*Petitioner*,

v.

William P. Barr, Attorney General of the United States,[1]

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 15, 2019
Filed: August 29, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Juan Inzunza Reyna, a citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals that he is ineligible for cancellation of removal

_____

[1]Attorney General Barr is substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

because he sustained a prior conviction for a crime involving moral turpitude. We agree with the Board and therefore deny the petition.

Reyna entered the United States from Mexico illegally in 1998. In September 2008, he pleaded guilty to theft by receiving stolen property, in violation of Neb. Rev. Stat. § 28-517 (1977). The Nebraska statute declares that "[a] person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." *Id.* § 28-517. Reyna's theft by receiving offense was a Class I misdemeanor, punishable by up to one year of imprisonment. *See id.* § 28-106(1).

The government commenced removal proceedings against Reyna in 2008. Reyna conceded removability but applied for cancellation of removal under 8 U.S.C. § 1229b. An immigration judge denied the application, and the Board dismissed Reyna's administrative appeal. The Board concluded that Reyna was ineligible for cancellation of removal because his Nebraska theft by receiving offense was categorically a crime involving moral turpitude. *See id.* §§ 1229b(b)(1)(C), 1227(a)(2)(A)(i). Reyna disputes that conclusion, and we review the Board's legal determination *de novo*. *See Gomez-Gutierrez v. Lynch*, 811 F.3d 1053, 1058 (8th Cir. 2016).

As a threshold matter, Reyna contends that neither the immigration judge nor the Board had subject matter jurisdiction over his removal proceedings, because the initial notice to appear served on Reyna did not include information about when and where to appear. We recently rejected the same argument in *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019), and Reyna's preliminary contention is foreclosed by that decision.

The Immigration and Nationality Act provides that an alien who is convicted of a crime involving moral turpitude is ineligible for cancellation of removal where the offense is punishable by a sentence of one year or longer. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1227(a)(2)(A)(i); *Pereida v. Barr*, 916 F.3d 1128, 1133 n.2 (8th Cir. 2019). Congress did not define "crime involving moral turpitude," and we have accepted the Board's interpretation that such crimes require conduct that is "inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." *Pereida*, 916 F.3d at 1131 (internal quotation omitted). At the time of Reyna's theft by receiving offense, the Board had long concluded that theft crimes involve moral turpitude, but "only when a permanent taking is intended." *Dominguez-Herrera v. Sessions*, 850 F.3d 411, 418 (8th Cir. 2017) (quoting *In re Grazley*, 14 I. & N. Dec. 330, 333 (B.I.A. 1973)).[2]

We use the so-called categorical approach to determine whether Reyna's theft offense is a crime involving moral turpitude. Under that approach, we consider whether the elements of his offense necessarily fit within the Board's generic definitions. *See Pereida*, 916 F.3d at 1131-32. We proceed by presuming that Reyna's conviction rested on no more than "the least of the acts criminalized" by the Nebraska statute, but this analysis is not "an invitation to apply 'legal imagination' to the state offense." *Gomez-Gutierrez*, 811 F.3d at 1058 (internal quotations omitted). For an offense to fall outside of the generic definition of a crime involving moral turpitude, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition." *Id.* (internal quotation omitted). Reyna has the burden of establishing that realistic

---

[2]The Board more recently has interpreted the Act to classify a larger set of theft offenses as crimes involving moral turpitude. *See In re Diaz-Lizarraga*, 26 I. & N. Dec. 847, 852-53 (B.I.A. 2016). We do not address that new interpretation, because we agree with the Board that Reyna's offense categorically involves moral turpitude under the old, narrower standard.

probability.  *See* 8 U.S.C. § 1229a(c)(4)(A)(i); *Pereida*, 916 F.3d at 1132; *Villatoro v. Holder*, 760 F.3d 872, 879 (8th Cir. 2014).

Reyna's offense of theft by receiving under Neb. Rev. Stat. § 28-517 is categorically a crime involving moral turpitude.  The statute prohibits receiving, retaining, or disposing of stolen movable property while knowing or believing the property to be stolen, unless undertaken "with intention to restore it to the owner." Lack of intent to restore the property to its owner is an element of the crime.  *State v. Hubbard*, 673 N.W.2d 567, 575 (Neb. 2004).  Proving a lack of intent to restore property to its owner is functionally equivalent to establishing an intent to deprive an owner of property permanently.  The Nebraska Supreme Court has quoted favorably commentary on § 223.6 of the Model Penal Code—upon which § 28-517 is based—that equates the two intent standards:

> Theft convictions generally require a purpose to deprive another of his property.  In terms, Section 223.6 does not require such a purpose for criminal receiving, but *the net effect of its provisions is the same. . . .* Since a purpose to restore defeats conviction, and since the prosecution must establish beyond a reasonable doubt that the actor did not have such a purpose, *the culpability required under Section 223.6 can properly be assimilated to a purpose to deprive the victim of his property*.  As a practical matter, the absence of a purpose to restore will be proved by showing that it was part of the receiver's plan to avoid detection and to realize for himself the benefits of the property.

*Id.* at 574-75 (emphases added) (quoting *Model Penal Code & Commentaries* § 223.6 cmt. 4(a) (Am. Law Inst. 1980)).

Reyna contends that there is daylight between lacking intent to restore property to an owner and intending to deprive an owner permanently.  He offers a type of "joyriding" as an example:  a person who drives a stolen vehicle and then abandons it might not care whether the vehicle ultimately ends up back in the hands of the

rightful owner. That person, Reyna argues, would not have intent to deprive the owner permanently but could be covered by the Nebraska statute as one who lacks intent to restore property to the owner.

Reyna points to no case where the State has applied its theft by receiving statute on those or similar facts. Given the Nebraska Supreme Court's receptiveness to the commentary quoted above, we conclude that the joyriding hypothetical remains in the realm of mere "theoretical possibility." *Gomez-Gutierrez*, 811 F.3d at 1058 (internal quotation omitted). Reyna has failed to establish a realistic probability that the State would apply § 28-517 to non-turpitudinous conduct. The Board therefore properly concluded that Reyna's offense is categorically a crime involving moral turpitude and that he is ineligible for cancellation of removal.

The petition for review is denied.

_____